FILED
2022 Dec-27  AM 10:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EXIE SPEARS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO: |
| v. ) | |
| ) | |
| MARION COUNTY COMMISSION, ) | JURY DEMAND |
| and COMMISSIONERS ) | |
| KEITH NICHOLS ) | |
| (in his official and individual capacities), ) | |
| KENNETH COCHRAN ) | |
| (in his official and individual capacities), ) | |
| DALE HOLT ) | |
| (in his official and individual capacities), ) | |
| TIM ESTES ) | |
| (in his official and individual capacities), ) | |
| BOB BURLESON ) | |
| (in his official and individual capacities), ) | |
| GREGORY GUNNIN ) | |
| (in his official and individual capacities), ) | |
| LARRY AKERS ) | |
| (in his official and individual capacities), ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

## I.    JURISDICTION

1.    This Court has jurisdiction over claims of Federal Question under 28 U.S.C.

§ 1331 (federal question), 28 U.S.C. § 1343 (Civil Rights), 42 U.S.C. § 1983

(deprivation of civil and constitutional rights), and 42 U.S.C. § 2000(e) (Title VII of the Civil Rights Act of 1964, as amended).  The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights secured by these statutes and the Fourteenth Amendment of the United States Constitution, providing relief against discrimination and retaliation in the workplace.

2.     Venue is proper in this judicial district where Defendants are located and doing business and where Plaintiff was employed.

## II.    PARTIES

3.     Plaintiff, Exie Spears ("Plaintiff" or "Spears") is an adult United States citizen who resides in the Northern District of Alabama.

4.     Defendant Marion County Commission ("Defendant" or "Commission") was Spears' employer at all times relevant to this Complaint. The Commission is a governmental entity located and doing business in the Northern District of Alabama.

5.     The Commission employs fifteen (15) or more employees.

6.     The Commission is a recipient of federal funds.

7.     Defendant, Keith Nichols ("Defendant" or "Nichols") was a county commissioner at all times relevant to this Complaint. Nichols resides in the Northern District of Alabama.

8.      Defendant, Kenneth Cochran ("Defendant" or "Cochran") was a county commissioner at all times relevant to this Complaint. Cochran resides in the Northern District of Alabama.

9.      Defendant, Dale Holt ("Defendant" or "Holt") was a county commissioner during the actions in this Complaint from 2018 through November of 2022. Holt resides in the Northern District of Alabama.

10.     Defendant, Tim Estes ("Defendant" or "Estes") was a county commissioner at all times relevant to this Complaint. Estes resides in the Northern District of Alabama.

11.     Defendant, Bobby Burleson ("Defendant" or "Burleson") was a county commissioner in this Complaint from 2018 through November of 2022. Burleson resides in the Northern District of Alabama.

12.     Defendant, Gregory Gunnin ("Defendant" or "Gunnin") is a newly elected county commissioner and took office in November of 2022. He is a commissioner during the actions in this complaint from November 2022 forward. Gunnin resides in the Northern District of Alabama.

13.     Defendant, Larry Akers ("Defendant" or "Akers") is a newly elected county commissioner and took office in November of 2022. He is a commissioner during the actions in this complaint from November 2022 forward. Akers resides in the Northern District of Alabama.

14. Plaintiff brings this lawsuit against Defendants, Nichols, Cochran, Holt, Estes, Burleson, Gunnin, and Akers in their official and individual capacities.

### III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

15. Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). Exhibit A.

16. After a failed conciliation, the EEOC issued a cause finding and dismissal titled Conciliation Failure and Notice of Rights on September 28, 2022. Exhibit B.

17. Plaintiff has exhausted all administrative prerequisites to the filing of this lawsuit.

### IV.   STATEMENT OF FACTS

18. Spears is African American and in a protected class.

19. Spears has worked for the Marion County Commission for nearly 20 years.

20. Spears is the only African American commission employee outside of the Sheriff's office.

21. Spears is in an interracial relationship and married his wife, who is White, in December of 2014.

22. Marion County is divided into five (5) districts. The Commission employs individuals in each of the districts to maintain the roads in that district.

23.    The Commission originally hired Spears as a full-time operator. His job
       duties included basic road maintenance and equipment operation.

24.    The Commission employs a foreman in each district whose job duties
       include logistics, parts ordering, managing timecards, and other supervisory
       type tasks. The foreman position is voted on and maintained until vacated, it
       is not a position that is open for appointment when a new commissioner is
       elected.

25.    Spears is listed as the foreman for District 2. The Commission voted Spears
       into the foreman position at a December 2015 commission meeting.

26.    Each district is overseen by that district's commissioner who is responsible
       for budgets, staffing, and other business-related areas. Commissioners are
       elected by the residents of Marion County. A commissioner can and often
       does delegate some of these tasks to the district foreman.

27.    Defendant Cochran is the current commissioner for District 2 and was
       elected

28.    Before being elected in 2018, the Commission employed Cochran as a
       laborer/truck driver with and under Spears in District 2.

29.    Immediately upon taking the District 2 Commissioner office in November of
       2018, Cochran discussed Spears' employment status with the county
       administrator and attorney, telling them that Cochran did not believe Spears

was foreman, did not view him as foreman, never viewed him as foreman, and would never view him as foreman.

30.  At the November 19, 2018, commission meeting, Cochran requested a pay raise for David Ballard, a White employee in District 2. The vote passed making Ballard's pay rate equal to Spears' at $17.51 per hours.

31.  On December 7, 2018, less than one month into office, Cochran confronted Spears while Spears was working to repair a county owned vehicle. During the altercation Cochran screamed at Spears and accused him of "tearing up county property." Spears reacted and cursed at Cochran one time and denied he was trying to "tear up county property." Cursing was not uncommon among Commission employees and had not been an issue in the past.

32.  Cochran reprimanded Spears and issued him a written reprimand citing insubordination. Cochran sent the reprimand to the county administrator to be placed in Spears personnel file.

33.  Cochran's reprimand was Spears first negative personnel action in more than fifteen years. Spears has not received another negative personnel action.

34.  The county administrator reported to the Commission chairman at the time that she believed Cochran was targeting Spears.

35. On December 14, 2018, Commissioner Bob Burleson stated that any reprimands need to go before the entire commission, not individual commissioner.

36. Cochran removed Spears from foreman duties and assigned him to fill potholes throughout the district, often keeping Spears secluded and away from the other employees. The tasks Cochran assigns to Spears are tasks usually reserved for laborers, not a foreman.

37. Examples of this work include:

   a. November 2018 – Cochran ignored Spears complaints that the exhaust from the old dump-truck bothered him and required him to use the truck to haul loads in the rain, without working windshield wipers.

   b. December 2018 – Cochran again ignored Spears complaints about the exhaust and told him to "roll the windows down;"

   c. June 2019 – Cochran assigned Spears to patching to be trained by a two-day temporary worker;

   d. Nearly constant since 2020 – Cochran has assigned spears to put out plant mix to patch roads throughout the district.

   This assignment removes Spears form working with others and requires him to drive an old ton truck. This is a manual labor position.

38.  Cochran has told Spears he is required to bring his lunch and cannot use his lunch breaks to go home. White employees take lengthy lunches and do not bring their lunches.

39.  Cochran has used racial slurs in front of Spears and others.

40.  Before being elected commissioner, Cochran asked former commissioner Eddie Byrd if he would be fired if he "knocked the hell out of blacky" referring to Spears.

41.  In April of 2019, while driving in the county vehicle with Spears, Cochran referred to his air conditioner repair as "nigger rigging."

42.  Spears reported Cochran's use of the racial slur to the county administrator.

43.  Spears learned from another employee that Cochran is "very racist" and refers to Spears Road (the street in District two where some of Spears' family lives) as "nigger holler."

44.  In January of 2020, the county administrator told Spears she would send his paycheck stubs by mail because he was concerned that Cochran would leave it laying out on the desk, open, for other employees and anyone who walked in to see. Cochran expressed his disapproval of this method stating he wanted to receive Spears' check to verify Spears' hours.

45.  February 3, 2020, Cochran confronted Spears cursing at him about the amount of time it was taking him to put out plant mix and about going home

for lunch when Cochran had told him to bring his lunch. Spears pointed out that the other employees (all White) did not bring lunches and went to lunch offsite. Cochran responded he "trusted" the other employees but did not "trust" Spears.

46. Because Cochran had issued him a written reprimand in the past for standing up for himself when he was being screamed at, Spears did not stand up for himself on this occasion and let Cochran continue to curse and yell.

47. Cochran left the confrontation telling Spears he would transfer him or fire him.

48. Cochran discussed his options with the county administrator and learned that Spears would have to agree to a transfer and Cochran had no grounds to fire him.

49. Spears took a couple vacation days to let the situation calm down.

50. Spears requested to be added to the February 2020 meeting agenda and addressed the Commission publicly with a written statement. The meeting was broadcast onto the Commission's YouTube page.

51. Spears reported to the Commission that Cochran would not talk to him about the supervisor position or really anything and that he did not believe it was fair to be demoted from his position just because Cochran had been elected.

52.    In response, at the public meeting, Cochran stated he did not know Spears was foreman and went on to state and made complaints about his job performance stating "I have a problem with your work ethics. There's nothing that you can do, will do or have done that I haven't done already. You can't fool me on any of this stuff, I know what it takes to get a job done."

53.    Cochran stated unequivocally, "In my eyes, you've never been foreman to us[.]"

54.    Cochran stated he wanted to decrease Spears' pay but was not allowed to.

55.    Cochran stated he planned to make David Ballard – a White employee - the District 2 foreman pending vote by the commission.

56.    Defendant Keith Nichols, Commissioner for District 1 stated he believed Cochran should be able to appoint Ballard as foreman.

57.    Spears responded that he believed that would put Spears in a compromising position by putting both of his former reports above him and it would only be a matter of time before he was written up and terminated.

58.    Cochran responded that Spears would get himself written-up and terminated by not doing the job.

59.  After this February 2020 confrontation, the county administrator asked Cochran if he was worried how his actions would effect his votes. He responded that he was not because he "never had the black vote anyway."

60.  After the meeting, Spears former commissioner, Eddie Byrd provided an interview to a local paper stating that he did not know why but Cochran never liked Spears.

61.  Cochran continued to deny Spears' position/title alleging that the promotion vote had not been official and was done after the fact. That the decision and raise had been kept a secret and that the employees started receiving paycheck in envelopes around that time preventing them from seeing what other employees were being paid.

62.  Cochran expressed frustration with Spears reporting the issues to the Commission stating, "I don't know what the deal is with (Spears) coming to the meeting and wanting some kind of title, he's still getting the pay."

63.  Cochran provided a statement to the local paper alleging that after he was elected commissioner Spears told him "things have a way of tearing up" and that he was concerned that Spears had malicious intentions of tearing up county equipment.

64.  Cochran alluded to his ability to make life hard on Spears claiming that it did not matter who was foreman because ultimately Cochran was in charge

and is the one who "makes the decisions" and stating something would have already "come up" if he wanted to "make life rough on him."

65.    Spears finalized and filed his EEOC Charge on March 3, 2020.

66.    Because of the Covid-19 pandemic, the EEOC investigation was delayed.

67.    During the investigation, the Commission did not address Spears' concerns or make any efforts to repair the working relationship between Spears and Cochran.

68.    The Commission and Defendants Commissioners continue to either speak negatively about Spears at public meetings or fail to publicly correct those speaking negatively about Spears.

69.    In August of 2022 at a commission meeting, Cochran raised the issue again when another commissioner requested a pay increase for his foreman in another district.

70.    Cochran continued to question who had the authority to make the employee a foreman and Nichols chimed in that Cochran had been trying to choose his own foreman for four years.

71.    The county attorney stated that Cochran could not select his foreman because of "special circumstances" but did not elaborate what those circumstances were.  After the meeting the county administrator confirmed

that the special circumstances were Spears' complaint against the commission.

72. The Commission has had discussions and made efforts in the last several months to implement a pay scale with one suggesting being to set all "foreman" at the same rate. At least two foreman are currently paid a higher rate than Spears.

73. During the pay scale discussions at the August 2022 commission meeting, Nichols reiterated that it was "a crying shame" that all four other commissioners have named a foreman in the last four years but that because of the "situation [the commission is] in" Cochran has been denied that ability.

74. The County administrator stated that supervisor and foreman should be the same for legal purposes and Cochran responded that would "be a problem."

75. Since Cochran took office in November of 2018, Spears has been denied overtime hours that other employees have received.

76. Since lodging his complaint with the Commission and filing his EEOC charge in 2020, Spears has continued to be denied the opportunity to perform the foreman functions of his job and has been required to do increased amounts of manual labor.

77.   Spears has been required to work under continued threats of reassignment and forced to do more manual labor tasks that White employees in an effort to make him quit.

78.   Spears has been denied the right of "foreman" pay since November of 2018 when Cochran and the Commission voted to increase the pay of David Ballard to the same rate as Spears.

79.   The Commission and individual commission members defendants have never addressed Spears complaints or made any effort to permit Spears to perform the job he holds.

80.   The Commission and individual commission members defendants have never made any effort to correct any negative and harmful statements made against Spears at the public meetings.

81.   Individual commission member defendants ratified the conduct of Defendant Cochran by failing to take any action, failing to correct him, or failing to prevent his discriminatory and retaliatory conduct.

82.   Caucasian employees are paid the same or greater wage than Spears despite Spears' title as foreman.

83.   Caucasian employees receive preferential treatment in overtime, lunch break, and other terms and conditions of the employment.

84.  Spears has been discriminated against because of his race, African American, in violation of Section 1981 of the Civil Rights Act of 1966, as amended.

85.  Spears has suffered a hostile work environment because of his race, African American, in violation of Section 1981 of the Civil Rights act of 1966, as amended.

86.  Spears has been discriminated against because of his race African American, in violation of Title VII of the Civil Rights Act of 1964, as amended.

87.  Spears has suffered a hostile work environment because of his race, African American, in violation of Title VII of the Civil Rights act of 1964, as amended

88.  Spears has been retaliated against for engaging in statutorily protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

89.  Spears has been denied equal protection under the law in violation of the Fourteenth Amendment to the United States Constitution.

90.  Spears is asserting claims against the individual commissioners (current and former), in their official and individual capacities under 42 U.S.C. § 1983.

91.  Spears has suffered pecuniary and nonpecuniary harm as a result of Defendants' unlawful employment actions.

## V.     STATEMENT OF PLAINTIFF'S CLAIMS

### COUNT ONE
### SECTION 1983 – SECTION 1981 RACE DISCRIMINATION
### (all defendants)
### (disparate treatment)

92.     Plaintiff re-alleges paragraphs 1-91 as if fully set forth herein.

93.     Plaintiff is African American and a member of a protected class.

94.     Defendants treated Caucasian employees more favorably in the benefits, privileges, terms, conditions, and pay in their employment.

95.     Defendants denied Plaintiff the functions and description of his job title.

96.     Defendants increased the pay rate of a Caucasian non-foreman employee negating the benefits of the foreman position to Plaintiff

97.     Defendants' adverse action were motivated by race.

98.     Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights.

99.     Defendants have continued this treatment as a pattern or practice of discriminating against African American employees in the terms, conditions, and pay of employment.

100.    Plaintiff suffered harm as a result of Defendants' unlawful actions.

WHEREFORE, Plaintiff requests the following relief:

a. Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, losses to retirement, front pay, back, pay, injunctive relief, compensatory and punitive damages, costs, interest and attorneys' fees;

b. Grant a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate Sections 1983 and 1981;

c. Award such other and further relief as this Court deems just and proper.

**COUNT TWO**
**TITLE VII - RACE DISCRIMINATION**
**(County Commission)**
**(disparate treatment)**

101. Plaintiff re-alleges paragraphs 1-91 as if fully set forth herein.

102. Plaintiff is African-American and a member of a protected class.

103. Defendants treated Caucasian employees more favorably in the benefits, privileges, terms, conditions, and pay in their employment.

104. Defendants denied Plaintiff the functions and description of his job title.

105. Defendants increased the pay rate of a Caucasian non-foreman employee negating the benefits of the foreman position to Plaintiff

106. Defendants' adverse action were motivated by race.

107. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights.

108. Defendants have continued this treatment as a pattern or practice of discriminating against African American employees in the terms, conditions, and pay of employment.

109. Plaintiff suffered harm as a result of Defendants' unlawful actions.

WHEREFORE, Plaintiff requests the following relief:

a. Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, losses to retirement, front pay, back, pay, injunctive relief, compensatory and punitive damages, costs, interest and attorneys' fees;

b. Grant a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate Title VII of the Civil Rights Acts of 1964 and 1991, as amended;

c. Award such other and further relief as this Court deems just and proper.

**COUNT THREE**
**SECTION 1983 – SECTION 1981 RACE DISCRIMINATION**
**(all defendants)**
**(hostile work environment)**

110. Plaintiff re-alleges paragraphs 1-91 as if fully set forth herein.

111. Plaintiff is African-American and a member of a protected class.

112. Defendants have subjected Plaintiff to a hostile work environment permeated with discriminatory, intimidation, ridicule, and insult.

113. Defendants' conduct includes targeting Plaintiff in disciplinary actions, subjecting him to racist remarks, and making public derogatory statements about Plaintiff.

114. Defendants' conduct has been severe or pervasive and has altered the conditions of Plaintiff's employment.

115. Defendants' conduct was motivated by race.

116. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights.

117. Plaintiff suffered harm as a result of Defendants' unlawful actions.

WHEREFORE, Plaintiff requests the following relief:

a. Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, losses to retirement, front pay, back, pay, injunctive relief, compensatory and punitive damages, costs, interest and attorneys' fees;

b. Grant a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate Sections 1983 and 1981;

c. Award such other and further relief as this Court deems just and proper.

**COUNT FOUR**
**TITLE VII RACE DISCRIMINATION**
**(County Commission)**
**(hostile work environment)**

118. Plaintiff re-alleges paragraphs 1-91 as if fully set forth herein.

119.  Plaintiff is African-American and a member of a protected class.

120.  Defendants have subjected Plaintiff to a hostile work environment permeated with discriminatory, intimidation, ridicule, and insult.

121.  Defendants' conduct includes targeting Plaintiff in disciplinary actions, subjecting him to racist remarks, and making public derogatory statements about Plaintiff.

122.  Defendants' conduct has been severe or pervasive and has altered the conditions of Plaintiff's employment.

123.  Defendants' conduct was motivated by race.

124.  Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights.

125.  Plaintiff suffered harm as a result of Defendants' unlawful actions.

WHEREFORE, Plaintiff requests the following relief:

a.  Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, losses to retirement, front pay, back, pay, injunctive relief, compensatory and punitive damages, costs, interest and attorneys' fees;

b.  Grant a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate Title VII of the civil rights act;

c.  Award such other and further relief as this Court deems just and proper.

## COUNT FIVE
## TITLE VII – RETALIATION
### (County Commission)

126.   Plaintiff re-alleges paragraphs 1-91 as if fully set forth herein.

127.   Plaintiff is African-American and a member of a protected class.

128.   Plaintiff engaged in statutory protected conduct by complaining internally and filing an EEOC charge related to his claims for race discrimination.

129.   After Plaintiff filed an EEOC Charge, the Commission took no actions to prevent further discriminatory conduct.

130.   The Commission made public statements alleging that Plaintiff's complaints were preventing Defendant Cochran from choosing his own foreman.

131.   The Commission ratified the public derogatory statements of Defendant Cochran insulting Plaintiff's work ethic and accusing Plaintiff of damaging county property.

132.   The Commission subjected Plaintiff to retaliation by threats of transfer, discipline, and termination.

133.   Defendant has subjected Plaintiff to further retaliation by assigning him to work alone on labor intensive tasks.

134.   Defendant's retaliation materially altered Plaintiff's work environment and painted him publicly in a negative light.

135. Defendant's retaliation was within close temporal proximity to his protected activity.

136. Defendant has provided no legitimate, non-discriminatory reason for the retaliatory conduct.

WHEREFORE, Plaintiff requests the following relief:

a. Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, losses to retirement, front pay, back, pay, injunctive relief, compensatory and punitive damages, costs, interest and attorneys' fees;

b. Grant a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate Title VII;

c. Award such other and further relief as this Court deems just and proper.

## COUNT SIX
## SECTION 1983 – FOURTEENTH AMENDMENT (EQUAL PROTECTION)
### (all defendants)

137. Plaintiff re-alleges paragraphs 1-91 as if fully set forth herein.

138. Plaintiff is African American.

139. Under color of law, Defendants denied Plaintiff equal protection to be free from discrimination and retaliation in the workplace.

140.    Defendants intentionally committed acts resulting in discrimination or retaliation against Plaintiff, either personally, by directing others, or ratifying the conduct of others.

141.    The commissioners have supervisory authority of Plaintiff.

142.    The violation of Plaintiff's rights resulted from Defendants' execution of its policies, customs, or official decisions, which are ongoing.

143.    The violation of Plaintiff's rights resulted from Defendants' failures to implement and enforce effective non-discriminatory policies and practices in the workplace, which are ongoing.

144.    Defendants were deliberately indifferent to Plaintiff's clearly established Constitutional and statutory rights.

145.    Defendants acted with malice or reckless disregard for Plaintiff's clearly established Constitutional and statutory rights.

146.    Plaintiff suffered harm as a result of Defendants' unlawful actions.

WHEREFORE, Plaintiff requests the following relief:

a.    Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, losses to retirement, front pay, back, pay, injunctive relief, compensatory and punitive damages, liquidated damages, costs, interest and attorneys' fees;

b.  Grant a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate Sections 1983;

c.  Award such other and further relief as this Court deems just and proper.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests all of the relief set forth herein.

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY
ON ALL CLAIMS SO TRIABLE**

Respectfully submitted,

/s/ Leslie A. Palmer
ASB-0436-L40P

OF COUNSEL:
Palmer Law, LLC
104 23rd Street South, Suite 100
Birmingham, AL 35233
(205) 285-3050
leslie@palmerlegalservices.com