FILED
2024 Nov-29  PM 11:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **EXIE SPEARS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:22-cv-01610-SGC** |
| | ) | |
| **MARION COUNTY** | ) | |
| **COMMISSION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Defendants Marion County Commission, Larry Akers, Bob Burleson, Kenneth Cochran, Tim Estes, Gregory Gunnin, Dale Holt, and Keith Nichols (collectively referred to as "Defendants") respectfully submit this brief in opposition to Plaintiff's Partial Motion for Summary Judgment.

Contents

STATEMENT OF FACTS ........................................................................3

   A.  Response to Movant's Statement of Facts .......................................3

   B.  Additional Undisputed Facts ..........................................................13

ARGUMENT ......................................................................................19

   I.  As Foreman, Plaintiff was personal staff and not an employee under Title VII.
19

   II.  No Evidence of Retaliation. ..........................................................25

   III.  There is evidence to support Defendants' Affirmative Bona Fide Merit

System Defense...................................................................................27

## STATEMENT OF FACTS

**A.**    **Response to Movant's Statement of Facts**

1.    Undisputed.

2.    Undisputed.

3.    Undisputed.

4.    Undisputed.

5.    Undisputed.

6.    Disputed that "[a]ny one county commissioner can make decisions that affect a specific employee's terms and conditions including promotion and pay." (citing Doc. 47-1, p. 11Cmm'n Dep. 36:13-22).

As dictated in the Marion County Personnel Handbook, "Marion County Commission is the approving authority for all County personnel policies and actions." Doc. 74, p. 5. Final hiring and firing authority rests with the Commission as a whole. *Id.* at 11 ("All persons hired or terminated must be approved by the County Commission and reflected in the minutes."). The pay for every employee of the county is determined and enacted by a vote of the Commission using a pay scale. Doc. 57, pp. 11-12; *see also* Doc. 48, p. 14, 114:6-9.

7.    Disputed that "[t]he Commission does not take any proactive or preventative steps to prevent or remedy race discrimination of retaliation outside of whatever

training may be provided to new commissioners by the [ACCA] or the handbook created by the ACCA." (citing Doc. 47-1, p. 5, 13-15, 17, C'mmn Dep.,  9:11-11:20, 43:23-44:3, 47:11-19, 49:15-20, 50:2-12, 50:18-52:4, 57:8-57:22).

The County Commission had enacted and adopted policies and procedures to prevent and combat discrimination of all kinds and embodied them in the Personnel Handbook. *See* Doc. 74 and *id.* at 3. The Handbook contains various anti-discrimination policies, *see* Doc. 74, p. 7, ¶ A, and anti-discrimination practices and procedures, *see id.* at ¶ B. *See also id.* at pp. 12-20, 35-38 The anti-discrimination practices and procedures also guaranteed employees the right to discuss "any and all matters relating to their employment and /or their personal welfare with their supervisors." *Id.* at 7, ¶ B. If the employee and the supervisor could not reach a solution, then the employee was guaranteed the right of access to successively higher levels of management. *Id.* Plaintiff never attempted to talk to Cochran, his supervisor, about the foreman position or his supervisory role. *See* Doc. 60, p. 44, 166:11-16.

As the County's representative testified, the County does their best to follow the Handbook and their training. Doc. 48, p. 1, 64:821. The proof of the County's commitment to prevent and address discrimination and retaliation is in the pudding. The Commission has never been presented with a charge or claim of discrimination or retaliation. *Id.*

8.    Undisputed.

9.    Disputed that "Spears is the only Black employee of the commission outside of the Sheriff's office." (citing Doc. 48, C'mmn Dep. 110:14-111:1).

The Commission has one other black employee outside the Sheriff's office who was hired within the past year or so. Doc. 60, p. 50, 190:10-21.

10.    Undisputed.

11.    Undisputed.

12.    Disputed that the December 2015 minutes represent a true and correction copy of what happened at the meeting. Unusual and external circumstances suggest that such a vote may not have occurred during an official meeting. *See* Doc. 92, pp. 10-12 (quoting and detailing unusual circumstances).

First, the process itself is abnormal. It was contrary to this standardized practice for the Commission to vote on and approve Plaintiff as foreman in December 2015 as the Commission did not normally name the foreman for a particular district as the standing Commissioner for that district named the foreman. *Id.* at 11, ¶ 9. Prior to the Commission's vote to appoint Plaintiff as District 2 foreman, there is no record in the County's official minutes of the Commission ever voting to appoint any employee as a district's foreman. *Id.*

Moreover, neither Ballard nor Cochran, Plaintiff's co-workers at the time, were told Plaintiff was their supervisor. *See* Doc. 57, p. 12 at ¶ 9.

Last, the meeting minutes from the December 2015 meeting approving Spears as foreman and raising his pay are as abnormal as the procedures itself. In the official minute book, there is a sheet of paper with official minutes stapled to the originally printed minutes from the meeting. *See* Doc. 92, p. 10; Doc. 58, p. 33, 122:4-19; *see also* Doc. 82, pp. 8-10. Cochran believes the page in the minute book was stapled into the book after the fact and, in reality, does not indicate an official vote of the Commission. *See* Doc. 92, p. 10; Doc. 58, p. 33, 122:4-19. In addition, despite the December 2015 meeting being filmed by the media and the local newspaper present to report on the meeting, there was no record of the vote to appoint Spears as foreman or to raise Spears's pay. Doc. 58, p. 10, 29:1-13.

13.    Undisputed.

14.    Undisputed.

15.    Undisputed.

16.    Undisputed.

17.    Disputed that "[a]s Commissioner over District Two, Cochran is Spears' direct supervisor, and the commission as a whole is Spears' second line supervisor." (citing Doc 48 p3, Commission Depo 70:18-22).

Disputed to the extent that the statement infers the Commission has secondary authority over material actions affecting Plaintiff's employment. *See supra*, ¶ 6.

18.    Disputed to the extent that this was Cochran's initial plan, but then decided to act as his own foreman, thus removing the need for the position. Doc. 57, p. 12 at ¶ 9; *see also* Doc. 58, p. 9, 26:3—27:15.

19.    Undisputed.

20.    Agree with additional information. Agree that Cochran refused to acknowledge Spears as foreman, claiming that the most senior employee should be foreman. However, District 2 does not need a foreman as Cochran, himself, has assumed that role. *See supra*, ¶ 18; *see also* Doc. 92, p. 12.

21.    Disputed that "[o]ver the course of his complaints and this lawsuit, Spears' work environment has changed with Cochran, his boss, texting instead of calling and not correcting or reprimanding Ballard a co-worker for telling Spears he was ashamed of him." (citing Doc 58 p25, 28, Cochran Depo 90:16, 90:23-91:11, 101:23-102:5).

Cochran primarily communicates with his employees in the morning. Doc. 58, p. 28, 101:9-19. If something unplanned arises during the day, his employees call him. *Id.*

22.    Agreed but with additions: Ballard retired around the end of May of 2024 citing among other things, being tired of the lawsuit, having to walk on pins and needles, and working with Spears. (Doc 58 p21, 25, Cochran Depo 73:20-74:6, 89:3-12, 90:11-16).

Ballard's primary reason for retirement was his extended tenure of service to the County, having served almost 30 years, and was pre-planned. Doc. 58, p. 824-25, 88:14—91:11. Ballard was also tired of dealing with the public having to cater to them day and night. *Id.*

23.     Agreed. *But see infra*, ¶ 24.

24.     Disputed as characterized: When asked why Spears, as the most senior man is not foreman now, Cochran stated "why would I want to make somebody a foreman that's got me sued over this – this lie." (Doc 58 p33-34, Cochran Depo 124:22-125:8).

Defendant Cochran added that it wasn't the filing of the lawsuit that bothered him, but that he did not trust Spears because "[i]f somebody don't tell the trust about you, it's hard to trust them." Doc. 58, p. 34, 125:19-126:5. When asked point blank, "[j]ust to be clear, Mr. Cochran, you don't trust [Plaintiff] because he's filed a lawsuit?", Cochran responded in the negative: "No, it's got nothing to do with that. It's the lies that he's saying I said this stuff and I didn't say it," along with the abnormal circumstances under which Plaintiff claims he was appointed foreman by the prior Commissioners. Doc. 58, p. 34-35, 126:9-130:17.

Cochran's refusal to accept or recognize Plaintiff as foreman is not a new thing. At the February 2020 Commission Meeting where Spears complained of Cochran's failure to recognize him as foreman (but failed to complain of racial

discrimination), Cochran stated that he did not believe Plaintiff was foreman, never viewed him as foreman, and that he would never view Plaintiff as foreman. Doc. 58, p. 11, 34:5—35:3.

Cochran's position is practical. Since being elected November 2018, Cochran has operated without a foreman because he, himself, serves in such a role, working alongside the road crew performing the daily duties foreman. Doc. 57, p. 12 at ¶ 9; *see also* Doc. 58, p. 9, 26:3—27:15. Defendant Cochran prides himself as being a hardworking, hands-on Commissioner. *Id.*

25.    Disputed. Cochran, who's current commission term does not expire until 2026, also testified he does not trust Spears because of the lawsuit. (Doc 58 p4, 19, Cochran Depo 7:21-23, 67:5-14).

When asked point blank, "[j]ust to be clear, Mr. Cochran, you don't trust [Plaintiff] because he's filed a lawsuit?", Cochran responded in the negative: "No, it's got nothing to do with that. It's the lies that he's saying I said this stuff and I didn't say it," along with the abnormal circumstances under which Plaintiff claims he was appointed foreman by the prior Commissioners. Doc. 58, p. 34-35, 126:9-130:17.

26.    Disputed. *See supra* ¶ 12.

27.     Disputed that Cochran is responsible for setting Spears' rate of pay on the pay scale adopted by the Commission during this litigation. (Doc 48 p6, 7, 14, Commission Depo 83:20-85:16, 86:16-22, 114:6-7).

When asked directly "who has set Mr. Spears' rate of pay," the Commission clarified that it was the "Marion County Commission." *See* Doc. 48, p. 14, 114:6-8. Opposing counsel clearly understood his answer as the County because asked several follow questions regarding "what was considered by the county commission in setting Mr. Spears' rate of pay." *Id.* at 114:10-11. The pay rate for every employee of the county is determined and enacted by a vote of the Commission using a pay scale. Doc. 57, pp. 11-12; *see also* Doc. 48, p. 14, 114:6-9.

28.     Undisputed.

29.     Undisputed.

30.     Undisputed.

31.     Undisputed.

32.     Disputed that "[a]fter learning about Spears' complaints, the Commission has not taken any action other than "talking" to their attorney, Defendants did not investigate the complaint, or discuss Cochran's conduct." (citing Doc 49 p 3, 10, Commission Depo 131:11-14, 158:9-14, 160:16-20).

Contrary to Plaintiff's assertions, the Commission investigated all of Plaintiff's complaints. The Commissioners, staff, and the County Attorney

investigated the complaints Plaintiff raised at the February 2020 Commission meeting. They searched various records and the County Attorney interviewed Spears. Doc. 49, p. 1, 123:3—18, 124:20—125:7 Defendants, themselves, and their legal also investigated the complaints Plaintiff made in his EEOC charge. *See* Doc. 49, p. 5, 137:2—154:10. Defendants and their counsel also attempted to resolve the issues and offered Spears numerous other positions with the Commission that required less manual labor, paid more, or were supervisor-level. *Id.*

33.    Undisputed.

34.    Undisputed.

35.    Undisputed.

36.    Disputed that "[t]he Defendants did not set Spears' pay based on a bona fide merit system, seniority system, or occupational requirements." (citing Doc 50 p10, Commission Depo 217:6-218:14; Doc 58 p34, Cochran Depo 125:3-8).

The pay rate for every employee of the county is determined and enacted by a vote of the Commission using a pay scale. Doc. 57, pp. 11-12; *see also* Doc. 48, p. 14, 114:6-9.

When Cochran assumed office in November 2018, he asked the Commission to grant David Ballard a raise to equal of that of Spears. Doc. 58, p. 11, 35:4-15. Cochran requested this raise for Ballard because Ballard has significantly more seniority than Spears—about seven or eight years more, in fact. Doc. 58, p. 11, 35:4-

15. Plaintiff's rate of pay has not decreased since Cochran assumed office and Plaintiff has been paid according to the County's pay scale when it was enacted after Cochran was elected to office. Doc. 58, p. 23,  83:4—84:13. Plaintiff's current rate of pay is in accordance with his years of service and he does not receive increased compensation according to the "foreman" designated scale. Doc. 58, p. 23, 83:4—84:13. Since Cochran took office in 2018, no District 2 employees received "foreman" pay because Cochran never named a foreman and acted as his own foreman. *Id.*

When asked point blank what bona fide merit system, seniority system, or occupational qualification,     that would affect Spears' pay did the County have in place, the Commission's representative identified the pay scale that governs how much County employees are paid. Doc. 50, p. 10, 217:6—218:14. To determine a particular employee's rate of pay, the scale takes into account the employee's department, occupation, and other qualifications, such as whether a member of the road or solid waste crew has a commercial driver's license or not. *See* Doc. 61, p. 2. Plaintiff, like all other county employees, is paid in accordance with this scale. Doc. 48, p. 14-15116:11—117:1.

37.   Disputed that Defendants cannot identify any preventative or corrective opportunity in the Commission handbook that Spears failed to take advantage of.

The anti-discrimination practices and procedures in the Handbook guaranteed employees the right to discuss "any and all matters relating to their employment and /or their personal welfare with their supervisors." Doc. 74 at 7, ¶ B. If the employee and the supervisor could not reach a solution, then the employee was guaranteed the right of access to successively higher levels of management. *Id.*

Plaintiff admits he never attempted to talk to Cochran, his supervisor, about the foreman position or his supervisory role. *See* Doc. 60, p. 44, 166:11-16.

**B.     Additional Undisputed Facts**
<u>**The Foreman Position**</u>

1.  A foreman reports directly to the commissioner for his district, and assumes the commissioner's duties and responsibilities when the commissioner delegates them to the foreman or is otherwise is absent or unable to fulfill them. (Doc. 1 ¶ 26; Doc. 60 p. 41, 155:14—156:15)

2.  The Commission employs individuals in each of the districts to help maintain and repair roads and other county infrastructure within that particular district. (Doc. 1, ¶ 22)

3.  Each commissioner is responsible for their respective district's road crew. (Ex. A pp. 11, 36:13-22)

4.  A road crew consists of a laborer, operator, and, sometimes, a foreman.

5.  A laborer performs "more physical stuff" and typically doesn't run or operate equipment or machinery, while an operator typically operates the heavy

machinery and equipment—i.e., bull dozers, backhoes—or drives trucks that require a CDL. (Doc. 60 p. 9, 27:10-28:10)

6.  The foreman acted as the commissioner's proxy if the commissioner was not present to give instructions at the beginning day or on-stie to communicate any new or changed work orders and ensure that the work was completed in a timely and satisfactory manner. For example, as to chain-of-command, the commissioner was usually present in the mornings when the road crew employees get to work, and he would then tell each individual what he wanted them to do that day. (Doc. 60 p. 10, 32:1-21)

7.  If the commissioner isn't present, which occurred a lot, then he would have already spoken to his foreman, who would then lay out the day's work. (Doc. 60 p. 10, 32:1-21)

8.  A foreman or, alternatively, as Plaintiff described it, "somebody that represents you as a foreman," is there, in the absence of the commissioner, to make sure that the day's work is laid out and gets done. (Doc. 60 p. 10 32:10-16)

9.  As former Commissioner Byrd's foreman, Plaintiff acted as Commissioner Byrd's "number two," so on a day-to-day basis Plaintiff was in more contact with other employees and know exactly what's going on in every function of a district, not just one. (Doc. 60 p. 22, 79:5—16)

10. In addition, as foreman, Plaintiff was not just a middleman, he would actively give instructions to other crew members. He would not just relay Byrd's instructions to others, he expanded on them. So, for example, if Commissioner Byrd had told Plaintiff to build a bridge, Plaintiff would actively direct and manage the project such as instructing others to put a beam in a certain place, or that a particular lane needs to be paved first. (Doc. 60 pp. 22-23, 80:18—81:21)

11. Prior to his election and taking office in late 2018, Defendant Cochran did not know that Plaintiff served as foreman for District 2 and Eddie Byrd never told him of Spears's position. *See* Doc. 60 p. 44, 167:22—168:2; *see also id.* at p. 34, 126:7—13)

12. Cochran never provided Plaintiff anything in writing and the Commission never voted to demote Plaintiff. (Doc. 60 p. 12, 39:6-22)

13. Plaintiff never attempted to talk to Cochran about the supervisor or foreman position until he did so publicly at a Commission meeting in February of 2020— nearly 2 years after Cochran took office. (Doc. 60 p. 44, 166:14—17)

14. Plaintiff has never experienced a reduction in pay and was being paid at foreman rate up until 2023 when the Commission enacted a pay scale. (Id. at 14, 46:15— 48:4; 49:12—51:20; *see also* Doc. 61 p. 2).

15. Plaintiff admits that David Ballard, Plaintiff's alleged unofficial replacement as District 2 foreman, is qualified for the job, and "feels strongly David could do the job." (Doc. 60 p. 35, 131:22—132:8)

16. David Ballard has five more years of experience working on the District 2 road crew than Plaintiff. (Doc. 60 p. 42, 157:18—158:14)

17. To be sure, a commissioner is not required to have a foreman in his district, as former Commissioner Byrd operated without a foreman for 9 years starting with the time he took office to 2015. (Doc. 60 p. 35, 132:9—19)

18. David Ballard supported Cochran during the election. (Id. at 45:169:20—170:8)

19. Plaintiff did not support Cochran and, in fact, actively campaigned against him while supporting former Commissioner Eddie. (Doc. 60 p. 23, 84:1—6)

**Plaintiff's Reporting & Complaints of Discrimination**

20. During a February 2020 Commission Meeting, Plaintiff, reading from a prepared, detailed an incident between himself and Defendant Cochran that had occurred the previous Monday. *See* Doc. 91, pp. 3-4; *see also* Doc. 81, Prepared Statement, p. 28.

21. During that "heated" confrontation, Cochran expressed his displeasure with Plaintiff's work performance and explained to Plaintiff that he could be transferred. *See id.* Plaintiff concluded his statement by telling the Commission that he didn't "feel it fair to be demoted because [Cochran] got elected

commissioner!" Doc. 81, p. 28; Doc. 91, pp. 2-4; *see also* Doc. 91, pp. 3-4 and Doc. 92 pp. 11-13 (detailing what was said and done during and after the February 2020 meeting).

22. Neither the County Administrator, the current Commissioners, nor Plaintiff's co-workers knew that Plaintiff had been appointed foreman and was receiving foreman pay until Spears raised the issue at the February 2020 meeting. *See id.*

23. Ultimately, though, Plaintiff never accused or complained of Defendant Cochran of discriminating against Spears because of his race at the February 2020 meeting. *See id.*; *see also* Doc. 49, p. 1 122:11--123:2; Doc. 49, p. 4, 133:13-18.

24. Plaintiff filed his EEOC charge of discrimination on March 3, 2020. (Doc. 1 ¶ 65)

25. This was the first time anyone associated with the County Commission or the individual Commissioners learned of Plaintiff's allegations of race discrimination. (Doc. 49 p. 1, 122:1-123:2)

## No Foreman in District 2

26. During the February 2020 meeting, Defendant Cochran said that he did not believe Plaintiff was foreman, never viewed him as foreman, and that he would never view Plaintiff as foreman. Doc. 58, p. 11, 34:5—35:3.

27. Prior to Plaintiff's filing of the EEOC Charge, Cochran did not appoint or name another employee as foreman due to a lack of necessity as he himself took on the

role and duties of foreman. Defendant Cochran prides himself as being a hardworking, hands-on Commissioner. Doc. 57, p. 12 at ¶ 9; *see also* Doc. 58, p. 9, 26:3—27:15.

28. During his deposition, Defendant Cochran asked if he "[w]ould ever consider making [Plaintiff] a foreman if he wasn't already?" Doc. 58, pp. 33-34, 124:22—125:8.

29. Defendant Cochran replied, "yes, I would." *Id.*

30. In response to why he hadn't named Plaintiff foreman already, Defendant Cochran said that another employe, David Ballard, had more seniority. *Id.*

31. And in response to the fact that Ballard had just recently retired right before Cochran's sat for his deposition, Cochran said, "why would I want to make somebody a foreman that's got me sued over this – this lie." *Id.*

32. Defendant Cochran added that it wasn't the filing of the lawsuit that bothered him, but that he did not trust Spears because "[i]f somebody don't tell the trust about you, it's hard to trust them." Doc. 58, p. 34, 125:19-126:5.

33. When asked point blank, "[j]ust to be clear, Mr. Cochran, you don't trust [Plaintiff] because he's filed a lawsuit?", Cochran responded in the negative: "No, it's got nothing to do with that. It's the lies that he's saying I said this stuff and I didn't say it," along with the abnormal circumstances under which Plaintiff

claims he was appointed foreman by the prior Commissioners. Doc. 58, p. 34-35, 126:9-130:17.

## ARGUMENT

Plaintiff's Motion for Partial Summary Judgment is due to be denied. First, the Motion is due to be denied because there is a genuine dispute of fact as to whether Plaintiff, as a foreman, was an "employee" under Title VII. Alternatively, the Motion is due to be denied as to that claim for the additional reason that the evidence shows that Defendants would have made the same decisions regarding Plaintiff's status as foreman even if Plaintiff had not engage in protected activity, or that Defendants decisions were not because of Plaintiff's protected activity.

Second, Defendants do not oppose dismissal as to two of the four affirmative defenses raised in Plaintiff's Motion. Specifically, the defenses of laches, and then waiver, release, acquiescence, consent, or ratification. However, sufficient evidence exists to deny Plaintiff's Motion as to the affirmative defenses concerning Defendants' bona fide merits and seniority system, and Plaintiff's failure to take advantage of the preventative and corrective measures available to him.

## I.    As Foreman, Plaintiff was personal staff and not an employee under Title VII.

Plaintiff requests summary judgment as to his retaliation claim against the Commission brough under Title VII. Title VII, though, is inapplicable because Plaintiff is not an "employee" under that provision. Plaintiff is not an "employee"

because, as foreman of District 2, Plaintiff serves as a member of Defendant Cochran's personal staff. Therefore, Plaintiff cannot bring suit under Title VII, including a claim for retaliation.

Title VII defines "employee," in relevant part, as "an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office ... or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level...." 42 U.S.C. § 2000e(f).

Title VII does not define "personal staff." In the absence of an express definition, the Eleventh Circuit has turned to the exemption's statutory language, legislative history, and applicable federal case law, and found that the "personal staff" exception as "embodies the general and traditional proposition that positions of confidentiality, policy-making, or acting and speaking on behalf of the [elected official] are truly different from other kinds of employment." *Shahar v. Bowers,* 114 F.3d 1097, 1104 n.15 (11th Cir. 1997).

This exception makes sense, too. As the Eleventh Circuit explained, "the government employer's interest in staffing its offices with persons the employer fully trusts is given great weight when the pertinent employee helps make policy, handles confidential information or must speak or act—for others to see—on the employer's behalf." *Id.* at 1103-04.

20

Courts in the Eleventh Circuit and sister circuits have looked have several factors to determine whether someone falls within the personal staff exception, including:

(1)     whether the elected official has plenary powers of appointment and removal,

(2)     whether the person in the position at issue is personally accountable to only that elected official,

(3)     whether the person in the position at issue represents the elected official in the eyes of the public,

(4)     whether the elected official exercises a considerable amount of control over the position,

(5)     the level of the position within the organization's chain of command, And

(6)     the actual intimacy of the working relationship between the elected official and the person filling the position.

*Laurie v. Ala. Ct. of Crim. App.,* 88 F.Supp.2d 1334, 1338 (M.D.Ala.2000), *aff'd,* 256 F.3d 1266, 1269 (11th Cir.2001).

This is a non-exhaustive list. A leading "personal staff" case, from the Fourth Circuit adds that courts should also look to "the full scope of the employee's duties, without limiting the inquiry to whether he is a policy maker," "whether the employee worked in the official's campaign," and "considered it significant whether the employee worked under the direction of the official or someone else." *Cromer v. Brown,* 88 F.3d 1315, 1323 (4th Cir. 1996).

When viewed in a light most favorable to the Commission, the evidence shows that Plaintiff, as foreman of District 2, is a member of Defendant Cochran's personal staff. Alternatively, at the very least, there is a question of fact as to whether Plaintiff was a member of Cochran's "personal staff" and, therefore, whether Plaintiff was an "employee" under Title VII.

First, Defendants testified that they have the discretion and authority to appoint and remove the foreman. Indeed, if the foreman is a commissioner's right-hand man, a second in command, and, in function, a chief of staff, then it would seem that the elected official would have the authority and discretion to choose this person as he or she pleases. The Commission has never formalized the job title or role as "foreman." *See* Doc. 57, p. 10 at ¶ 7; *see also* Doc. 74, pp. 5-6 (describing employee classification system). Appointing a foreman for a particular district is discretionary to the respective commissioner elected to oversee that district. *Id.* The expectations and responsibilities of a particular district's foreman varies according to the respective commissioner. *Id.* It was contrary to this standardized practice for the Commission to vote on and approve Plaintiff as foreman in December 2015 as the Commission did not normally name the foreman for a particular district as the standing Commissioner for that district named the foreman. *Id.* at 11, ¶ 9. Prior to the Commission's vote to appoint Plaintiff as District 2 foreman, there is no record

in the County's official minutes of the Commission ever voting to appoint any employee as a district's foreman. *Id.*

Second, as the foreman, the Plaintiff reported directly to the District 2 Commissioner and the Commission as a whole. He did not report to another individual commissioner or another employee.

Third, Plaintiff's own testimony demonstrates that the position of foreman is a commissioner's alter ego and representative to the public. Again, Plaintiff testified that foreman is a commissioner's "number 2" and was tasked with building and maintaining relationships and contact with the public. Plaintiff did this as Byrd's foreman. And Defendant Cochran even asked Plaintiff to leave his personal cell phone in the car on job sites because members of the public called Plaintiff so often requesting County services. In fact, representing the Commissioner on the job sites is one of the job duties that Plaintiff specifically complains has been denied to him.

Fourth, a Commissioner exercises a considerable amount of control over the foreman, but at the same time allows the foreman to exercise some discretion in carrying tasks and completing projects.

Fifth, foreman sits on the top of road crew food chain, subject only to the respective commissioner and the Commission itself. This high organizational level strongly suggests that foreman is personal staff.

Sixth, the amount of daily interaction, communication, and trust that a foreman has with the Commissioner also strongly suggests that foreman is personal staff. Again, Plaintiff testified that a commissioner would instruct the foreman on the daily tasks and then let the foreman handle it. A foreman is also the primary point of contact during the day to respond to any sudden changes in plans or emergencies. Indeed, Plaintiff testified that it would typically just be Commissioner Byrd and himself responding to emergency storm damage.

Last, while subtle, the level of political involvement of the foreman in a commissioner's campaign is relevant here. Plaintiff actively campaigned and supported Byrd; he has never voted for Defendant Cochran and has actively campaigned against him. In contrast, David Ballard, Defendant's desired foreman, has been long time friends with Cochran and Ballard has actively supported Cochran's campaign efforts.

Based on these factors and the evidence, the foreman position is a commissioner's personal staff. Foreman is the commissioner's right-hand man, boots-on-the-ground, and, as Plaintiff put it, "second in command." This is the functional road crew equivalent to a Governor, President, Representative, or Senator's chief of staff. Foremen do not carry out minor responsibilities for county commissioners. Road repair and maintenance is a central responsibility of individual commissioners, particularly under a district system where an individual

commissioner is responsible for a district within the county (as opposed to a unit system where the commission is responsible for the county as a whole).

As a result of the foreman position acting as the commissioner's personal staffer, Title VII is inapplicable because Plaintiff is not an "employee" under Title VII. Accordingly, Plaintiff's Motion for Partial Summary Judgment as to his claim of retaliation under Title VII is due to be denied.

## II.    No Evidence of Retaliation.

Plaintiff has failed to meet his burden of producing evidence of retaliation, both direct and circumstantial. Alternatively, even if Cochran's statements and the Commission's inaction are considered evidence of retaliation, there is evidence that Defendants would have made the same employment decisions related to Plaintiff's status as foreman regardless of his protected activity.

First, Plaintiff has not produced any evidence of retaliation. As to Defendant Cochran's statements, these are not direct evidence. As Defendant further explained in his deposition, it wasn't the filing of the lawsuit that bothered him, but that he did not trust Spears because "[i]f somebody don't tell the trust about you, it's hard to trust them." Doc. 58, p. 34, 125:19-126:5. When asked point blank, "[j]ust to be clear, Mr. Cochran, you don't trust [Plaintiff] because he's filed a lawsuit?", Cochran responded in the negative: "No, it's got nothing to do with that. It's the lies that he's saying I said this stuff and I didn't say it," along with the abnormal circumstances

under which Plaintiff claims he was appointed foreman by the prior Commissioners. Doc. 58, p. 34-35, 126:9-130:17. So, in short, its not the protected activity that leads Cochran to distrust Plaintiff, it's the factual dispute and disagreement over what transpired with respect to his status of foreman and Cochran's refusal to recognize him as such.

Moreover, Plaintiff's characterization of the Commission's inaction in the face of the Complaint is contradicted by the record. While Defendants are certainly inexperienced in such matters as this is the first discrimination claim brought before the County in recent memory, Defendants have adhered to the policies and procedures and advice of counsel.

Alternatively, even if it was direct evidence, Defendants would have undertook the same decision in the absence of Plaintiff's protected activity of filing an EEOC Complaint. This is evidenced by Cochran's prior refusal to recognize or pay Plaintiff "foreman" pay.

Indeed, Cochran's refusal to accept or recognize Plaintiff as foreman is not a new thing. At the February 2020 Commission Meeting where Spears complained of Cochran's failure to recognize him as foreman (but failed to complain of racial discrimination), Cochran stated that he did not believe Plaintiff was foreman, never viewed him as foreman, and that he would never view Plaintiff as foreman. Doc. 58, p. 11, 34:5—35:3.

Ultimately, the same decision would have been made because it was already made before the complained of conduct. Cochran's position is practical in nature. Since being elected November 2018, Cochran has operated without a foreman because he, himself, serves in such a role, working alongside the road crew performing the daily duties foreman. Doc. 57, p. 12 at ¶ 9; *see also* Doc. 58, p. 9, 26:3—27:15. Defendant Cochran prides himself as being a hardworking, hands-on Commissioner. *Id.*

Accordingly, regardless of whether the evidence is direct or circumstantial, Defendants would have made the same-decision, or in other words, Defendants actions were not taken because of Plaintiff's protected activity. Thus, Plaintiff has failed to show the absence of a genuine dispute or fact and that he is entitled to judgment as a matter of law.

### III.    There is evidence to support Defendants' Affirmative Bona Fide Merit System Defense.

There is evidence that shows Defendants actions with respect to Plaintiff's rate of pay was motivated by a bona fide system.

As previously stated, the Commission's vote at the December 2015 meeting not only appointed Spears as foreman, but it also approved a raise for Spears. When Cochran assumed office in November 2018, he asked the Commission to grant David Ballard a raise to equal of that of Spears. Doc. 58, p. 11, 35:4-15. Cochran requested this raise for Ballard because Ballard has significantly more seniority than

27

Spears—about seven or eight years more, in fact. Doc. 58, p. 11, 35:4-15. Plaintiff's rate of pay has not decreased since Cochran assumed office and Plaintiff has been paid according to the County's pay scale when it was enacted after Cochran was elected to office. Doc. 58, p. 23,  83:4—84:13.

Plaintiff's current rate of pay is in accordance with his years of service and he does not receive increased compensation according to the "foreman" designated scale. Doc. 58, p. 23, 83:4—84:13. Since Cochran took office in 2018, no District 2 employees received "foreman" pay because Cochran never named a foreman and acted as his own foreman. *Id.*

When asked point blank what bona fide merit system, seniority system, or occupational qualification,      that would affect Spears' pay did the County have in place, the Commission's representative identified the pay scale that governs how much County employees are paid. Doc. 50, p. 10, 217:6—218:14. To determine a particular employee's rate of pay, the scale takes into account the employee's department, occupation, and other qualifications, such as whether a member of the road or solid waste crew has a commercial driver's license or not. *See* Doc. 61, p. 2. Plaintiff, like all other county employees, is paid in accordance with this scale. Doc. 48, p. 14-15116:11—117:1. No District 2 employee receives "foreman / supervisor pay," or "assistant foreman" pay because Cochran has never named someone as

foreman or assistant foreman. Doc. 58, p. 23, 83:4—84:13. Accordingly, summary judgment is due to be denied because the pay scale operated as a bona fide system.

Respectfully submitted, this the 29th day of November, 2024.

/s/ *C. Richard Hill, Jr.*
C. RICHARD HILL, JR. (0773-L72C)
ASHLEY H. FREEMAN (3142-I75F)
W. JACKSON BRITTON (8252-K46Y)
*Attorneys for the Defendant Marion County Commission*